# United States Court of Federal Claims

No. 14-989 C

|  |  |
|---|---|
| CALL HENRY, INC., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) |
| THE UNITED STATES, | ) ) ) |
| Defendant. | ) ) ) |

RCFC 12(b)(6); Failure to State a Claim

*Brian Koji*, Allen, Norton & Blue, P.A., Tampa, Florida, for plaintiff.

*James T. Mahoney*, National Aeronautics and Space Administration, Washington, DC, and *Joyce R. Branda* and *Robert M. Norway*, United States Department of Justice, Civil Division, Washington, DC, for defendant.

**OPINION AND ORDER**

*SMITH*, **Senior Judge**

This action is before the court on defendant's motion to dismiss. Plaintiff's complaint contests a final decision of the Contracting Officer of the United States National Aeronautics and Space Administration ("NASA") denying Call Henry, Inc.'s (CHI) certified request for reimbursement in the amount of $1,897,627 plus associated fees and costs under the contract and by operation of the Services Contract Act, 41 U.S.C. §§ 6701-6707.

On January 28, 2015, defendant filed a motion to dismiss plaintiff's breach of contract claim for failure to state a claim, pursuant to Rule 12(b)(6) of the Rules of the U.S. Court of Federal Claims ("RCFC"). For the following reason, the court grants defendant's motion to dismiss.

I.  **Background**

   A.  **Factual History**

On April 23, 2003, Plaintiff, Call Henry, Inc., entered into a contract with Defendant, the National Aeronautics and Space Administration ("NASA"), whereby plaintiff agreed to provide inspection, maintenance, and testing services for the John H. Glenn Research Center in Brook Park, Ohio. This contract has a base period of three years followed by up to seven one-year option periods and is a services contract governed by the Service Contract Act.

At the commencement of the contract, plaintiff's employees were members of the International Brotherhood of Teamsters Local Union No. 416 ("the Teamsters"), and, as such, plaintiff was subject to a collective bargaining agreement with the Teamsters pursuant to the Services Contract Act. 41 U.S.C. § 6701 *et seq.* (2012). This collective bargaining agreement, which included wage and fringe benefit provisions, was incorporated into plaintiff's contract with defendant. Compl. ¶ 20. Article XXIII of the collective bargaining agreement required plaintiff to pay contributions to the Teamsters' pension fund as follows:

> Effective January 1, 2003 and thereafter, the Employer agrees to pay into the Teamsters Local 416's Pension Fund…the agreed amount during the term of this Agreement, for all hours for which said employee received pay, but not to exceed a total of forty (40) hours per week, for each employee covered under the classifications of this agreement.
>
> …
>
> Contributions to the Pension Fund must be made for each month on each eligible employee. Company contributions to the Pension Fund will in no way be distributed as wages.

Compl. Ex. 1, at 2. Pursuant to the SCA, this collective bargaining agreement was incorporated into the contract between the parties, along with a price adjustment clause which required Defendant to pay Plaintiff for "increase[s]…in applicable wages and fringe benefits to the extent that the increase is made to comply…as a result of [the] Department of Labor wage determination applicable of the anniversary date of the multiple year contract…." 48 CFR § 52.222-43[1].

In 2012, Plaintiff's employees chose to decertify Teamsters as the representative for the bargaining unit and voted for the International Association of Machinists and

---

[1] The contract initially referenced 48 CFR § 52.222-44, which deals with single-year contracts. Both parties acknowledged that the intended provision was 48 CFR § 52.222-43, which deals with multiyear and option contracts.

2

Aerospace Workers District Lodge 60 as the new employee representative. After the decertification, plaintiff was informed that it was deemed to have withdrawn from the Teamsters' pension fund pursuant to the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"). 29 U.S.C. § 1381 *et seq*. (2012). This constituted a complete withdrawal under the Employee Retirement Income Security Act ("ERISA"), and plaintiff was required to pay a withdrawal liability for the unfunded vested benefits, which initially amounted to $3,304,727. Plaintiff initiated ERISA arbitration procedures to contest portions of the liability, and the pension plan recalculated the withdrawal liability amount as totaling $1,686,646.

Plaintiff submitted a claim for increased costs associated with providing the pension plan and the professional costs incurred through arbitration. The claim was denied by NASA on September 11, 2014, and plaintiff filed this claim for breach of contract on October 15, 2014.

B.     **Procedural History**

Plaintiff originally filed suit on October, 15, 2014, contesting a final decision of the Contracting Officer of NASA, denying plaintiff's claim for reimbursement in the amount of $1,897,627 under the Contract's price adjustment clause for increased fringe benefit costs incurred by plaintiff and associated with providing benefits mandated by application of a wage determination by operation of the Service Contract Act, 41 USC §§6701-6707. See Original Compl., *Call Henry, Inc.*, No. 14-989, ECF No. 1. On January 28, 2015, defendant, filed a motion to dismiss for failure to state a claim, alleging that plaintiff's withdrawal liability is not a fringe benefit, but a statutory liability. *Call Henry, Inc.*, No. 14-989, ECF No. 8.

On July 7, 2015, this Court issued an order for supplemental briefing so that both plaintiff and defendant might answer the following questions:

1. Whether the defendant was required by contract between itself and plaintiff, or by some other authority, to reimburse plaintiff for any contributions to or costs associated with the pension plan, and, if so, the source of that authority.

2. If there was a reimbursement requirement, whether that requirement was incorporated into the contract between plaintiff and defendant.

3. Whether the defendant is considered an employer under 29 U.S.C. § 1002(5), where an employer is any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan.

4. If the defendant reimbursed plaintiff for any contributions to or costs associated with the pension plan, whether defendant is considered an employer and is liable to the plan for the amount of the withdrawal liability pursuant to 29 U.S.C. § 1381(a).

5. If defendant is considered an employer and it is required to pay the withdrawal liability, whether a failure to pay would constitute a breach of its contract with plaintiff.

*Call Henry, Inc.*, No. 14-989, ECF No. 13.  Both plaintiff and defendant filed opening supplemental briefs on November 9, 2015. *Call Henry, Inc.*, No. 14-989, ECF Nos. 18 and 19.  Plaintiff and Defendant both responded to each other's opening supplemental briefs on November 23, 2015. *Call Henry, Inc.*, No. 14-989, ECF Nos. 20 and 21.  Defendant's motion is now ripe for review.

## II.    Discussion

Motions to dismiss under RCFC Rule 12(b)(6) test the legal sufficiency of a complaint in light of RCFC Rule 8(a), which requires "a plausible 'short and plain' statement of the plaintiff's claim, showing that the plaintiff is entitled to relief." *K-Tech Telecommunications, Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1282 (Fed. Cir. 2013) (quoting *Skinner v. Switzer*, 131 S. Ct. 1289, 1291 (2011)).  Although a complaint "does not need detailed factual allegations," the plaintiff must plead enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  When considering a motion to dismiss for failure to state a claim, the court must accept plaintiff's factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  Nonetheless, the court should dismiss a complaint "when the facts asserted by [the] claimant do not entitle him to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002).

### A.    The Contract Obligations

As an initial matter, it is important to determine whether or not NASA had a contractual obligation to reimburse CHI for contributions to or costs associated with the pension plan.  Plaintiff argues that the contract specifically incorporated the Teamsters Local 416 collective bargaining agreement as the applicable wage determinations.  The clause plaintiff refers to (H.6) states, in pertinent part, that "in absence of the [Department of Labor Wage Determination's] incorporation, all economic provisions, *including all prospective increases*, of the current Collective Bargaining Agreement…shall apply." (Emphasis added).  Plaintiff further argues that a reimbursement requirement is inherent in the incorporation of Clause 52.222-41 of the Services Contract Act, which states that "[e]ach employee employed in the performance of this contract by the Contractor or any subcontractor shall be paid not less than the minimum monetary wages and shall be furnished fringe benefits in accordance with the wages and fringe benefits determined by the Secretary of Labor, or authorized representative, as specified in any wage determination attached to this contract." FAR 52.222-41(c) (May 1989).  Finally, plaintiff argues for the reimbursement requirement by

4

pointing to the incorporation of the price adjustment clause set forth in FAR 52.222-44, which requires reimbursement for any increases incurred by CHI associated with providing wage and fringe benefits mandated by the Services Contract Act. Pl.'s Opening Brief. *Call Henry, Inc.*, No. 14-989, ECF Nos. 18.

While we agree that the contract incorporated both a price adjustment clause and wage determination clause, plaintiff has misconstrued the language and intent of the Services Contract Act. The purpose of the Services Contract Act is to protect employees, not contractors, from suffering financial disadvantage when a successor contractor undertakes workforce management. *See American Fed'n of Labor & Congress of Indus. Org. v. Donovan*, 757 F.2d 330, 352 (D.C. Cir. 1985)). Furthermore, the previously mentioned contractual provisions suggest that the Services Contract Act requires successor contractors to provide the same economic provisions of either Department of Labor wage determinations or existing collective bargaining agreements. *See, e.g., Trinity Servs., Inc. v. Marshall*, 593 F.2d 1250, 1257-58 (D.C. Cir. 1978). Only the *economic provisions,* specifically wage determinations and fringe benefits, of the collective bargaining agreement are incorporated into the contract between CHI and NASA. The Services Contract Act does not incorporate the terms of a collective bargaining agreement into a Government contract, but merely mandates that a successor contractor pay an employee no "less than the wages and fringe benefits [that] the service employee would have received under the predecessor contract, including accrued wages and fringe benefits and any prospective increases in wages and fringe benefits provided for in the collective-bargaining agreement as a result of arm's-length negotiations." 41 U.S.C. § 6707(c)(1). Furthermore, wage determination clauses and the Services Contract Act do not "require successor contractors to comply with any provision of the predecessor's [collective bargaining agreement] other than the wage and fringe benefit provisions." *Systems Application & Techs., Inc. v. United States*, 100 Fed.Cl. 687, 717 (2011) (Sweeney, J) (citing 29 C.F.R. § 4.163(a) (2009)).

### B. Reimbursement Requirement

Plaintiff contends that the history of price adjustment combined with the initial inclusion of wage and fringe benefit costs into the original pricing schedule effectively require NASA to reimburse CHI for the withdrawal liability that triggered when CHI employees withdrew from the Teamsters Local Union 416. This court does not agree. Though there exists a contractual requirement that defendant reimburse claimant for contributions to and costs associated with the pension plan, that requirement does not extend to withdrawal liability.

Even if the inclusion of provisions from the collective bargaining agreement effected an incorporation of a reimbursement requirement, it would not follow that defendant is required to pay the withdrawal liability. CHI bases its theory of relief on incorrect assumption that withdrawal liability is included as the fringe benefit of

increased pension costs. Compl., *Call Henry, Inc.*, No. 14-989, ECF No. 1, at 9. Withdrawal liability is not a fringe benefit. The Services Contract Act specifically states that "[n]o benefit required by any other Federal law…is a fringe benefit for the purpose of the [Services Contract Act]." 29 C.F.R. § 4.171(c). Instead, withdrawal liability is covered under the Multiemployer Pension Plan Amendments Act of 1980 (MPPAA), 29 U.S.C. § 1381 *et seq.*, which means that it is a "benefit required by [another] Federal law" and not a fringe benefit. 29 C.F.R. § 4.171(c). Additionally, withdrawal liability is not a contractual obligation, but a distinct statutory debt imposed by the MPPAA. *See e.g., Einhorn v. Dublin Bros. Lumber Co., Inc.*, 33 F. Supp. 3d 504, 516 (D.N.J. 2014). The Teamsters Collective Bargaining Agreement provides for contributions to the pension plan, but does not mention withdrawal liability. It follows that withdrawal liability is not a fringe benefit provided for in the contract.

### C. Employer Status under 29 U.S.C. § 1002(5)

In response to defendant's motion to dismiss, this court deemed of import whether or not defendant could be classified as an "employer" for the purpose of the Employee Retirement Income Security Act of 1974 (ERISA). In an Order dated July 7, 2015, this court sought additional briefing from the parties so that it might determine whether NASA is considered an employer under 29 U.S.C. § 1002(5) for the purpose of withdrawal liability. Supplemental briefs have been provided, and that question is now ready for decision.

Title I of ERISA defines an "employer" as "any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan; and includes a group or association of employers acting for an employer in such capacity." 29 U.S.C. § 1002(5). Title I of ERISA further defines a "person" as "an individual, partnership, joint venture, corporation, mutual company, joint-stock company, trust, estate, unincorporated organization, association, or employee organization." 29 U.S.C. § 1002(9). The Federal Government is excluded from both of these definitions.

Additionally, Title I of ERISA specifically excluded the Federal Government from the definition of "employer" for the purpose of employee benefit plans by providing a separate definition for "governmental plan." The term "governmental plan" is defined as "a plan established or maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing." 29 U.S.C. § 1002(33). ERISA was designed such that plans offered by the Federal Government are separate from other plans and, thus, exempt from the general definition of "employer" for the purpose of general plans. The Supreme Court noted that "[j]ust as Congress' choice of words is presumed to be deliberate, so too are its structural choices." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2529 (2013) (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.A. 167, 177 (2009)).

### D.     Employer Status under 29 U.S.C. § 1381(a)

Title IV of ERISA incorporates the definition of "employer" from Title I by regulation.  As a result, courts have routinely adopted a "contributing obligor" definition of the term "employer" for the purposes of Title IV and withdrawal liability.  Both plaintiff and defendant attempt to do the same in this case.

In determining whether defendant is an employer for withdrawal liability purposes under Title IV of ERISA, both parties seek to apply the same standard in varying ways to the determination of whether NASA is an employer for the sake of withdrawal liability. They seek to apply the "contributing obligator" standard first articulated in *Korea Shipping Corp. v. New York Shipping Ass'n-Int'l Longshoremen's Ass'n Pension Trust Fund*, 880 F.2d 1531 (2d Cir. 1989)(*Korea Shipping Corp.*).  The court in *Korea Shipping Corp.* defined an "employer" as "a person who is obligated to contribute to a plan either as a direct employer or in the interest of an employer of the plan's participants." *Id*. at 1537 (quoting *Korea Shipping Corp. v. New York Shipping Ass'n-Int'l Longshoremen's Ass'n Pension Trust Fund*, 663 F. Supp. 766, 770 (S.D.N.Y. 1987)).  Rejecting the common law definition of "employer," *Korea Shipping Corp.* ultimately defined "employer" for the purposes of withdrawal liability as "one obligated to contribute to a plan for the benefit of the plan's participants." *Id*.  This standard was subsequently adopted by other Federal Circuits. *See Resilient Floor Covering Pension Fund v. M&M Installation, Inc.*, 630 F.3d 848 (9th Cir. 2010); *Carrier Container Council, Inc. v. Mobile S.S. Ass'n Inc.-Int'l Longshoreman's Ass'n. AFL-CIO Pension Plan*, 896 F.2d 1330 (11th Cir. 1990); *Seaway Port Authority v. Duluth-Superior ILA Marine Ass'n Restated Pension Plan*, 920 F.2d 503 (8th Cir. 1990).

Plaintiff contends that NASA should be classified as an employer based on the standard set forth in *Korea Shipping Corp*.  Plaintiff bases this contention on the incorporation of the economic provisions of the collective bargaining agreement into the initial contract and the subsequent reimbursement for all pension contributions. Pl's Resp. to Def. Opening Supp. Brief, 14-989, ECF No. 20 at 15-16.  Likening the case to *Bowers v. Transportation Maritima Mexicana, S.A.*, 901 F.2d 258 (2d Cir. 1990), plaintiff argues that an indirect obligation to contribute to a pension plan classifies a party as an employer for the purpose of withdrawal liability.  However, we do not agree.  First, *Bowers* is not analogous.  In *Bowers*, when the defendant elected to become a member of the New York Shipping Association, it became contractually bound to those bylaws, which included a provision requiring all members be bound by any future collective bargaining agreements between the New York Shipping Association and third-party unions and pension plans. *Id*. at 262-263.

Second, *Seaway Port Authority* applied a stricter definition of employer. 920 F.2d at 506.  That court agreed with the court in *H.C. Elliot, Inc. v. Carpenters Pension Trust Fund*, 859 F.2d 808 (9th Cir. 1988), which found that the term "employer" describes a

7

"signatory employer" when referring to pension plans. *Id*. at 509. *Seaway Port Authority* highlighted the common factual pattern throughout relevant case law that parties subject to withdrawal liability were contractually bound to make pension contributions. *Id*. That is not the case here. Although defendant routinely reimbursed CHI for pension plan contributions, defendant's contractual obligation was for *reimbursement*, not contribution. CHI posits that the incorporation of the collective bargaining agreement into the initial contract with NASA created a contractual obligation to reimburse CHI for increased pension costs. While this obligation for reimbursement does exist, reimbursement and contribution are not the same.

This court must also look to the holding in *Transpersonnel, Inc. v. Roadway Express, Inc.*, 422 F.3d 456 (7th Cir. 2005). *Transpersonnel, Inc.* found that "the nature of the obligation to contribute [is] contractual, and therefore the party 'who is signatory to a contract creating the obligation to contribute is the employer for purposes of establishing withdrawal liability.'" *Id*. at 460 (quoting *Rheem Mfg. Co. v. Cent States, SE & SW Areas Pension Fund*, 63 F.3d 703 (8th Cir. 1995)). The *Transpersonnel, Inc.* court, as well as subsequent courts, expounded upon the holding in *Rheem* in finding that the obligation to *reimburse* for contributions made by the direct employer is not the equivalent of an obligation to contribute to the fund. *Id.* The obligation of reimbursement arises only *after* a contribution has been made. *Id. Transpersonnel, Inc.* drew a distinction between the entity that signed the collective bargaining agreement and the separate entity with a contractual reimbursement requirement, and we must apply that distinction here. Thus, even if NASA was under a contractual obligation to reimburse CHI, defendant is still not a "contributing obligor," and, thus, not an employer for the purpose of withdrawal liability.

In order for defendant to be liable for the withdrawal liability, defendant must first be classified as an "employer." 29 U.S.C. § 1381(a) states that "[i]f an employer withdraws from a multiemployer plan in a complete withdrawal or partial withdrawal, then the employer is liable to the plan in the amount determined under this part to be the withdrawal liablity." *Id*. As stated above, the United States is not considered an employer under 29 U.S.C. § 1002(5) or 29 U.S.C. § 1381(a). The crux of plaintiff's argument that NASA is required to pay the withdrawal liability is based upon the incorrect classification of NASA as an employer. However, as this court has determined that NASA is not an employer, it follows that defendant is not required to pay the withdrawal liability.

### E.    Breach of Contract Claim

After considering both the defendant's contractual obligations and its status as an employer under both Title I and Title IV of ERISA, it becomes clear that NASA did not breach its contract with CHI for failing to pay the withdrawal liability. As previously stated, CHI bases its theory of relief on incorrect assumption that withdrawal liability is

8

included as the fringe benefit of increased pension costs. Compl., *Call Henry, Inc.*, No. 14-989, ECF No. 1, at 9.  As this and other courts have indicated, withdrawal liability is not a fringe benefit.  Instead, withdrawal liability is covered under the Multiemployer Pension Plan Amendments Act of 1980 (MPPAA), 29 U.S.C. § 1381 *et seq.*, as a "benefit required by [another] Federal law." 29 C.F.R. § 4.171(c).  Furthermore, withdrawal liability is not a contractual obligation, but a distinct statutory debt imposed by the MPPAA. *See e.g., Einhorn v. Dublin Bros. Lumber Co., Inc.*, 33 F. Supp. 3d 504, 516 (D.N.J. 2014).  The Teamsters Collective Bargaining Agreement provides for contributions to the pension plan, but does not mention withdrawal liability.  It follows that withdrawal liability is not a fringe benefit provided for in the contract, and, thus, the contract has not been breached.

Furthermore, In order for defendant to be liable for the withdrawal liability, defendant must first be classified as an "employer" under either Title I or Title IV of ERISA.  Title I of ERISA specifically excluded the Federal Government from the definition of "employer" for the purpose of employee benefit plans by providing a separate definition for "governmental plan."  For Title IV, courts have looked to *Korea Shipping Corp.*, which defines an "employer" as "one obligated to contribute to a plan for the benefit of the plan's participants." 663 F. Supp. at 770.  Courts have routinely drawn a distinction between an obligation to reimburse and an obligation to contribute to pension plans. *Transpersonnel, Inc.*, 422 F.3d at 460.  While NASA is obligated to reimburse CHI for contributions to the pension fund, defendant is not directly obligated to contribute to that fund.  Thus, NASA is not obligated to pay the withdrawal liability CHI accrued when its employees withdrew from that fund.  The failure to pay the withdrawal liability has not resulted in a breach of contract.

### III. Conclusion

For the reasons set forth above, defendant's MOTION to dismiss is **GRANTED.**

**IT IS SO ORDERED.**

        s/ Loren A. Smith
LOREN A. SMITH
Senior Judge